FILED

08 JUL 22 PM 12: 46

RICHARD W. WIEKING
U.S. DISTRICT COURT
NO. DIST. OF CALIFORNIA

1  GREGORY L. BROWN
   J-82241
2  P.O. Box 5246
3  CORCORAN, CA 93212
   IN PRO SE
4

5

6          ORIGINAL

7

8                                                    (PR)
9          United States District Court
10         Northern District of California  MMC

11

12  GREGORY L. BROWN,           No. CV 08      3501
13          Petitioner,
14                              GREG'S DECLARATION AND
                                MEMORANDUM IN Support
15                              Of Good Cause To File A
                                LATE Petition For Writ Of
16                              HABEAS Corpus Due To
        V.                      Newly Discovered Evidence
17
18                              And A Claim Of Actual
19  KEN CLARK, WARDEN,          INNOCENCE
20          Respondent.

21

22      Declaration of Gregory L. Brown

23
24  I, GREGORY L. BROWN, declare that:
25      1.) I am the petitioner in the above entitled-
    action. I make this declaration in support of
26  good cause to file a late petition for writ of
27
28  habeas corpus due to newly discovered evidence.

                        1

2.) In early 2007, After years of continuous and vigorous review and analysis of the court and reporter's transcripts, I learned that my right to a fair trial and due process, as guaranteed under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, was violated as a result of ineffective assistance of trial counsel; ineffective assistance of appellate counsel; and prosecutorial misconduct. Immediately upon knowledge thereof, on April 26, 2007, I filed a state petition for writ of habeas corpus in Superior Court of San Francisco in California regarding those claims and others. (SEE: Exhibit-A; an exact copy of the petition.) On May 30, 2007, the petition was denied. (SEE: Exhibit-B; an exact copy of the denial.) On June 29, 2007, I filed the petition with the Court of Appeal of the State of California. (SEE: Exhibit-C; an exact copy of the petition.) On July 5, 2007, the petition was denied. (SEE: Exhibit-D; an exact copy of the denial.) On August 10, 2007, I filed the petition with the Supreme Court of California. On January 30, 2008, the petition was denied. (SEE: Exhibit-F; an exact copy of the denial.) Therefore, all claims were exhausted.

3.) These papers, as well as the accompanying petition for writ of habeas corpus, will demonstrate (1) that I am actually innocent of and have always maintained my innocence and non-involvement in the conspiracy to commit murder and attempted murder

of Robin Williams; (2) that the trial record is devoid of even a particle of evidence connecting me to the crimes charged; And (3) that my wrongful and unlawful convictions, And continuous INCARCERATION, are a direct result of prosecutorial misconduct And defective and ineffective trial and appellate representation. For example, during closing arguments, the prosecutor not only failed to limit the scope of his closing arguments to the "evidence" presented at trial, but he also deliberately and maliciously argued numerous "false and unsupported material statements that rest exclusively on the issue of guilt." The prosecutor also repeatedly exhorted the jury to bring in a "guilty" verdict, in spite of the non-supportive evidence. Trial counsel not only failed to object to the prosecutor's false and unsupported material statements, but also failed to challenge questionable manufactured overt acts regarding the conspiracy charge, and failed to use a preemptory challenge to remove an admitted bias juror from the jury panel. Appellate counsel failed to raise the following non-frivolous claims ON APPEAL: 1.) Ineffective assistance of trial counsel; 2.) Prosecutorial misconduct; 3.) Gregg's convictions are based on less than proof beyond a reasonable doubt of every element of the crimes charged; And 4.) Juror gave false answers/statements during voir dire. The latter two claims are also raised in these papers and the petition.

3

1  Additionally, these papers and the petition will show
2  claims of fundamental miscarriage of justice and
3  constitutional errors and the cause and prejudices
4  associated with them; and that the federal courts
5  have jurisdiction over the claims.
6      4.) The foregoing factual allegations create a
7  genuine issue of fact as to whether fundamental
8  constitutional errors caused my conviction of
9  conspiracy to commit murder and attempted
10 murder, and therefore, justify my filing of a
11 late petition for writ of habeas corpus due to newly
12 discovered evidence and a claim of actual innocence
13 and my entitlement to the relief requested therein;
14 as explained in the attached memorandum.
15      5.) I declare under penalty of perjury that
16 the foregoing is true and correct.
17
18 Memorandum In Support Of Good Cause To File
19 A Late Petition For Writ Of Habeas Corpus Due To
20 Newly Discovered Evidence And A Claim of Actual Innocence
21                    Introduction
22     In early 2007, Greg learned that his right to
23 a fair trial and due process, as guaranteed under
24 the Fifth, Sixth and Fourteenth Amendment of the
25 United States Constitution, was violated as a result
26 of ineffective assistance of trial counsel; ineffective
27 assistance of appellate counsel; and prosecutorial
28 misconduct. Immediately upon knowledge thereof,

4

ON April 26, 2007, GREB filed a state petition for writ of habeas corpus in Superior Court of San Francisco in California which set forth the following grounds : (1) Ineffective assistance of trial counsel; (2) Ineffective assistance of Appellate counsel; (3) Prosecutorial misconduct; (4) His conviction rest on less than proof beyond a reasonable doubt of every element of the crimes charged; and (5) Juror gave intentionally false answers and misleading statements during voir dire. (SEE: Exhibit-A; an exact copy of the petition.) On May 30, 2007, the petition was denied.) (SEE: Exhibit-B; an exact copy of the denial.) On June 29, 2007, I filed the petition with the Court of Appeal of the State of California. (SEE: Exhibit-C; an exact copy of the petition.) On July 5, 2007, the petition was denied. (SEE: Exhibit-D; an exact copy of the denial.) On August 10, 2007, I filed the petition with the Supreme Court of California. (SEE: Exhibit-E; an exact copy of the petition.) On January 30, 2008, the petition was denied. (SEE: Exhibit-F; an exact copy of the denial.

3

4          ARGUMENT

5             Point I

6

7    Good Cause Exists For Greg's Filing Of
8    A Late Petition For Writ Of Habeas Corpus
9    Because The Petition Contains Newly
     Discovered Evidence And A Claim Of
10   Actual Innocence

11

12   Greg is entitled to file a late petition for
13   writ of habeas corpus.

14       Equitable tolling applies, to this action because
15   Greg has always maintained his innocence and
16   non-involvement in the conspiracy to commit murder
17   and attempted murder of Robin Williams, and the
18   petition contains newly discovered evidence that
19   proves his actual innocence and shows the
20   ineffective assistance of trial counsel; the
21   ineffective assistance of appellate counsel; and
22   the prosecutorial misconduct that caused his
23   unlawful and wrongful convictions.

24   A. Prosecutorial Misconduct

25

26       During trial, Prosecutor Floyd Andrews'
27   (hereinafter "Andrews") use of false and
28   unsupported material statements in his "Closing

                    6

1  Arguments" were so improper that it infected the
2  trial with unfairness as to make Greg's conviction
3  of conspiracy to commit murder and attempted
4  murder of Robin Williams a denial of due process
5  and a fair trial.  In closing, Andrews told the
6  jury that Wanda Fain wrote the note "for Gregory
7  Brown," (RT 1349.) [1] and "... he (Greg) can
8  get her (Robin Williams) out to Jerrold Avenue and
9  shoot her and leave her dead through the other two
10  (Wanda Fain and Joseph Diggs)." (RT 1349.)
11  Andrews further repeatedly exhorted the jury to
12  being in a "guilty" verdict, not based on the
13  evidence, but "Because they did it." (RT 1350.)
14  The trial record is devoid of any evidence to support
15  any of those accusations.  There was no evidence
16  introduced at trial that showed Fain wrote the note
17  "for Gregory Brown."  There was no evidence
18  introduced at trial that showed Greg had any
19  connection to the trip that Fain, Diggs and Williams
20  took to Jerrold Avenue.  There was no evidence
21  introduced at trial from which a rational inference
22  may be made that Greg agreed with Fain, Diggs or
23  anyone else to take Robin Williams' life, or to do
24  her any harm at all.  And nowhere in the trial

25

26  [1]  All Reporter's / Clerk's Transcripts referred
27  to in these papers can be found in Exhibit - G
28  attached hereto.

7

1  RECORD is there any evidence as to who actually
2  shot Williams.

3      As demonstrated above, not only did Andrews
4  failed to limit the scope of his closing arguments
5  to the evidence presented at trial but he also
6  deliberately and consciously introduced numerous
7  false and unsupported material statements which
8  rested exclusively on the issue of guilt. Additionally,
9  Andrews' exhortations of the jury to bring in a
10 "guilty" verdict, by any means other than the
11 evidence, "Because they did it" amount to malicious
12 prosecution and several instances of prosecutorial
13 misconduct because: (1) it was contrary to the
14 evidence presented at trial; (2) it was an injection
15 of his personal opinion or belief; (3) it influenced
16 and inflamed the jury's prejudices against Greg;
17 (4) it encouraged the jury to disregard the court's
18 instructions concerning innocence and guilt; and
19 (5) it diverted the jury's attention from its duty
20 to decide the case on the merit of the evidence
21 presented at trial.

22      But, just as equally prejudicial, it negated the
23 fact that other people could have been responsible
24 for the shooting of Robin Williams. On cross-examination,
25 Williams was questioned about various persons who
26 might bear ill will toward her. In January 1994,
27 just a year prior to her shooting, Robin Williams
28 was convicted of a residential burglary, and named

8

1  three black males who were also involved. (RT 573,
2  587-588, 641.) After that burglary, Corky, the
3  boyfriend of the woman whose house she had burglarized,
4  beat her up. (RT 583.)  Williams had also incurred
5  drug debts in the past. (RT 576, 580.)  However,
6  she denied having any drug debts on February 7, 1995,
7  and did not remember ever being threatened by
8  drug dealers to whom she owed money. (RT 576, 580,
9  582.)  She said that she knew Irwin Berry at
10 Sunnydale, but did not remember him hitting her
11 with a gun because of some debts she owed him.
12 (RT 582.)  She specifically denied owing any money
13 to a man named "Tails" from the Sunnydale area,
14 and said that she did not remember him coming up
15 to her the night before February 7, 1995 and
16 pointing a gun at her. (RT 581-582.) However,
17 Dafnie Hayes testified that she was talking on the
18 telephone with a friend at her home in the Sunnydale
19 Projects on the afternoon of February 6, 1995 when the
20 friend said, "Oh, my God, Tails pulled a gun on Robin."
21 Robin referred to Robin Williams. (RT 1005.) Hayes also
22 testified that sometime during the last couple of
23 months Phoebe's apartment at 56 Santos had caught
24 on fire.  Williams and Phoebe were once roommates
25 at 56 Santos. (RT 1005-1006.) Over the years,
26 Williams had gotten into fights at Sunnydale.
27 (RT 584-585.)  Williams admitted that she might
28 have some enemies around the city. (RT 586.)

1    Andrews' false and unsupported material
2 statements implanted in his closing arguments, whether
3 individually or collectively, so infected the trial
4 outcome as to create a genuine effect on the jury's
5 verdict, especially when considering the fact that the
6 <u>trial judge did not instruct</u> the jury to disregard
7 the improper statements.

8    Prosecutor Andrews' intentional and malicious
9 use of false and deceitful material statements in his
10 "Opening Statements" at trial were so improper that
11 they infected the trial with unfairness as to make
12 Greg's resulting convictions a denial of due process
13 and a fair trial. Andrews' opening statements alleged,
14 "She (Robin Williams) was shot because she made a
15 statement to the police about Gregory Brown,
16 about him selling drugs, about him having a gun.
17 She was shot to punish her for that statement and
18 to prevent her from testifying in future court
19 appearances." (RT 314.) Andrews failed to
20 introduce any evidence at trial to support any of
21 those accusations, and Robin Williams' trial
22 testimony totally contradicted Andrews' improper
23 statements while exonerating Greg on all charges
24 relating to her shooting.

25    Williams testified at trial that on January 6,
26 1995, she was visiting Greg at 126 Blythdale, when
27 the police came. She saw a gun in Greg's hand and
28 a bag of crack in the other. (RT 511.) She made a

10

1  Statement to the police as to what she saw. (RT 513.)
2  Some days later she was at a friends house when
3  Wanda "Fain" delivered a note to her, that included
4  a photo of her taken some years before by Greg.
5  Greg was nearby when the note was delivered,
6  standing outside on a porch. (RT 515.) Fain said Greg
7  wanted to talk to her. (RT 517.) She did not speak
8  to Greg because she considered the note threatening
9  and was scared. (RT 518.) About a week and a half
10 later, she met Greg on the street and they spoke.
11 He asked her to stay out of sight, and not to testify
12 at his upcoming hearing, and in return he "would
13 take care of" her as long as she didn't testify.
14 (RT 519.) She was satisfied with the conversation
15 and returned to her regular visits to 136 Blythdale,
16 going there about every other day. She went there
17 to talk to Greg and they were friends. (RT 520.)
18 Greg never threatened her, and she believed he
19 had no intention of hurting her. (RT 557.)
20      Andrews was aware that Williams would testify
21 as she did, because it was relatively a recital of
22 her preliminary hearing testimony. (RT 11-16; 51-52.)
23 Nevertheless, Andrews deliberately, consciously and
24 maliciously used false and deceitful material
25 statements in his opening statements to manipulate
26 the jury. This fact is highlighted by Andrews'
27 calculated (and successful) efforts to paint
28 / / / /

11

1  GREG AS A HEARTLESS dope dealer who has previously
2  captured and corrupted the victim, Robin Williams.
3  Thus, for example, in his opening statements
4  Andrews said:

5      " Robin is going to tell you that she is addicted
6      to cocaine, that she had been supplied
7      cocaine by Gregory Brown and other people
8      . . . ., that she did a lot of things to
9      get her poison. She'd go to Gregory
10     Brown and get drugs there. She's traded
       drugs for sex with Mr. Brown."

11 (RT 315, line 28; 316, line 1-7.)  Of course, there was
12 No evidence adduced at trial to support this
13 assertion.

14     Absent the deceitful, false and/or unsupported
15 material statements embedded in Prosecutor Andrews'
16 Closing Arguments and Opening Statements, there is
17 absolutely no way a rational jury could have found
18 Greg guilty of the crimes charged because there was
19 simply no evidence introduced at trial connecting
20 him to the shooting of Robin Williams.  The improper
21 statements, undoubtedly, created such a substantial
22 and injurious effect on the jury's decision as to
23 render Greg's convictions unconstitutional.
24 Additionally, the improper statements have long been
25 recognized as prosecutorial misconduct:

26     "A lawyer shall not... state a personal
27     opinion as to... the credibility of a
28     witness... or the guilt or innocence of

                        12

AN ACCUSED." Model Rules of Professional Conduct, Rule 3.4 (e) (1984); SEE ALSO Code of Professional Responsibility, DR 7-106 (C)(4)(1980); ABA Standards for Criminal Justice: 3-5.8 (b) (2d ed. 1980).

" The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict." ABA Standard for Criminal Justice 3-5.8 (d) (2d ed. 1980); cf. Model Rules of Professional Conduct, Rule 3.4 (e); Code of Professional Responsibility, DR 7-106 (C)(7); ABA Standards for Criminal Justice 3-6.1 (c) (2d ed. 1980).

" The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury." ABA Standards for Criminal Justice 3-5.8 (C) (2d ed. 1980); SEE BERGER V. United States, 295 U.S. 78, 88 (1935).

When a claim of prosecutorial misconduct is raised, the relevant question is whether the prosecutor's comments " so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly V. DeChristoforo, 416 U.S. 637 (1974). Moreover, the appropriate standard of review for

13

1  such a claim on writ of habeas corpus is "the narrow
2  one of due process, and not the broad exercise of
3  supervisory power." Id. at 642. (citing, Darden
4  V. Wainwright, 477 U.S. 168, 181.)  A defendant's
5  due process rights are violated when a prosecutor's
6  comments render a trial fundamentally unfair.
7  See id; Smith V. Phillips, 455 U.S. 209, 219 (1982)
8  ("the touchstone to due process analysis in cases of
9  alleged prosecutorial misconduct is the fairness of
10 the trial, not the culpability of prosecutor").
11     The state court failed to address Greg's
12 prosecutorial misconduct claim.  The state court's
13 failure to recognize constitutional errors constitute
14 an unreasonable application of clearly established
15 federal law. See, e.g. Idaho V. Wright, 497 U.S.
16 805,      (1990).  The state court must "clearly and
17 expressly state [ ] that its judgment rests on a state
18 procedural bar" in order for federal review to be
19 precluded.  Harris V. Reed, 489 U.S. 255, 263
20 (1989)(internal quotations omitted).
21     Arguendo, even if there is some sort of
22 procedural default, it is excused based on the
23 "Miscarriage of Justice" and/or the "Fundamental
24 Constitutional Error" and/or the "Cause and Prejudice"
25 Exceptions.  The federal court has to consider a
26 habeas corpus petition if there is a claim of
27 fundamental miscarriage of justice. Schlup V.
28 Delo, (1995) 513 U.S. 298,      . In Schlup V.

14

1 _Delo_, the Supreme Court held that procedurally
2 barred claims can be heard on the merits if it is
3 more likely than not that no reasonable juror would
4 have convicted the petitioner in light of the new
5 evidence. Also, see: _Murray V. Carrier_, 477 U.S.
6 478,      (1986).    In _Brecht V. Abrahamson_,
7 the Supreme Court held that errors are not
8 harmless when they have a "substantial and
9 injurious effect or influence in determining the jury's
10 verdict." _Brecht V. Abrahamson_, 507 U.S. 619,
11 637 (quoting _Kotteakos V. United States_, 328 U.S.
12 750, 776 (1946)). See, also, _California V. Roy_,
13 519 U.S. 2 (1996), reh'g denied, 519 U.S. 1071 (1997)
14 (holding that errors in writing of pertinent jury
15 instructions was not harmless). Indeed, federal
16 courts can still reach the merits of a federal claim
17 if the petitioner can show "cause and prejudice."
18 _Coleman V. Thompson_, 501 U.S. 722, 749 (1991);
19 _Reed V. Ross_, 468 U.S. 1, 11 (1984); _Engle V._
20 _Isaac_, 456 U.S. 107, 129 (1982); _Wainwright V. Sykes_,
21 433 U.S. 72, 87 (1977).
22    Here, Gregg has shown umpteenth acts of
23 prosecutorial misconduct including but not limited
24 to the prosecutor's use of false and unsupported
25 material statements during his "closing arguments"
26 At trial, and has demonstrated the prejudicial
27 effects of those wrongful acts and statements which
28 caused or contributed to Gregg's unlawful

15

1 | CONVICTIONS. AN ATTORNEY'S ACTIONS OR OMISSIONS CAN
2 | BE SO SUFFICIENTLY EGREGIOUS AS TO AMOUNT TO THE SORT
3 | OF "EXTRAORDINARY CIRCUMSTANCES" THAT WOULD JUSTIFY
4 | THE APPLICATION OF EQUITABLE TOLLING. Spitsyn V.
5 | Moore, 345 F.3d 796, 800 AND f.N. 1, 801-02 (9th
6 | Cir. 2003); Baldayaque V. United States, 338 F.3d
7 | 145, 153 (2nd Cir. 2003); United States V. Wynn,
8 | 292 F.3d 226, 230 (5th Cir. 2002).

9 | GREG WAS CONSTITUTIONALLY REPRESENTED by COUNSEL
10 | DURING TRIAL AND ON DIRECT APPEAL AND NEITHER
11 | COUNSEL INDICATED THAT A PROSECUTORIAL MISCONDUCT
12 | CLAIM EXISTED; IT WAS ONLY THROUGH CONTINUOUS AND
13 | VIGOROUS REVIEW AND ANALYSIS OF THE COURT TRANSCRIPTS
14 | DID THE PROSECUTORIAL MISCONDUCT CLAIM MATERIALIZED.
15 | IN FACT, GREG'S TRIAL COUNSEL RENDERED CONSTITUTIONALLY
16 | INEFFECTIVE ASSISTANCE OF COUNSEL by NOT OBJECTING TO
17 | THE PROSECUTOR'S IMPROPER MATERIAL STATEMENTS AT TRIAL.
18 | GREG HAS ALWAYS MAINTAINED HIS INNOCENCE AND
19 | NON-INVOLVEMENT IN THE CONSPIRACY TO COMMIT MURDER
20 | AND ATTEMPTED MURDER OF ROBIN WILLIAMS, AND THE
21 | TRIAL RECORD IS WITHOUT A PARTICLE OF EVIDENCE
22 | CONNECTING HIM TO THE SHOOTING. THEREFORE, GREG
23 | IS ENTITLED TO EQUITABLE TOLLING BECAUSE HIS
24 | PROSECUTORIAL MISCONDUCT CLAIM IS NEWLY DISCOVERED
25 | EVIDENCE THAT ESTABLISHES A CREDIBLE CLAIM OF
26 | ACTUAL INNOCENCE AND A CLAIM OF FUNDAMENTAL
27 | CONSTITUTIONAL ERROR.

28 |

16

As illustrated, GREG's Right to a fair trial and due process, under the Fifth and Fourteenth Amendments of the United States Constitution, were violated as a result of several instances of prosecutorial misconduct.

Based on the above, the Court must grant GREG quitable tolling on this claim, and any other relief the Court deems fair and just.

B. <u>Ineffective Assistance Of Trial Counsel</u>

GREG's trial counsel's failure to make meritorious objections to each and every one of the prosecutor's false and unsupported material statements during trial amount to ineffective trial representation.

As demonstrated above, under "A. Prosecutorial Misconduct," Prosecutor Andrews told the jury that Wanda Fain wrote the note "for Gregory Brown," (RT 1349.) and ". . . he (GREG) can get her (Robin Williams) out to Jerrold Avenue and shoot her and leave her dead through the other two (Fain and

1  Joseph Diggs)." (RT 1349.) The prosecutor further
2  repeatedly exhorted the jury to bring in a "guilty"
3  verdict, not based on the evidence, but "Because
4  they did it." (RT 1350.)  There was not a
5  scintilla of evidence presented at trial that supports
6  any of those false material statements. Any reasonably
7  effective counsel would have fervently objected to
8  each of those improper statements, particularly,
9  in light of the fact that closing arguments are
10  limited to the issue in the case and the evidence that
11  has been presented. Trial counsel's non-objections
12  to the false and unsupported material statements
13  allowed the prosecutor to : (1) argue facts that are
14  not supported by the evidence in the record;
15  (2) inject his personal beliefs and opinions;
16  (3) influence and inflame the jury's prejudices
17  against Greg; (4) encourage the jury to disregard
18  the court's instruction regarding innocence and
19  guilt; and (5) divert the jury's attention from
20  its duty to decide the case on the merit of the
21  evidence presented at trial. Moreover, counsel's
22  non-objections gave credence to the prosecutor's
23  baseless opening statements.
24        Had counsel objected to the improper statements,
25  the objections would have undoubtedly resulted in
26  the judge ordering the jury to disregard the
27  statements which would have put the jury on notice
28  that they are not allowed to consider the improper

18

1  statements, and that alone could have changed
2  the outcome of the trial.
3      Not only did Greg's trial counsel failed to
4  object to the prosecutor's improper statements at
5  trial; but, counsel also failed to challenge the
6  validity and the legality of the overt acts in his
7  motion to dismiss (Calif. Penal Code Sec. 995 motion.)
8  (CT 70, 152; RT 27.)   To support a crime of
9  conspiracy to commit murder, the prosecution must
10 prove the commission of an overt act by one or more
11 of the parties engaged in the agreed upon conspiracy.
12 In this case, Greg was only named in four overt
13 acts in support of the conspiracy (Nos. 2, 4, 5, and 6.).
14 Overt act No. 2 alleged that Greg took a photo and
15 gave it to Wanda Fain; No. 4 alleged that Greg
16 accompanied Fain to deliver a note; No. 5 alleged
17 that Greg encourage Fain and Joseph Digg to
18 murder Robin Williams; and No. 6 alleged that Greg
19 and Fain resided at 126 Blythdale.  (CT 1-4.)
20 There was no finding of overt act No. 6; no
21 evidence to support No. 5; and Nos. 2 and 4 fail
22 because (1) there is no evidence of an agreement
23 between Greg and anyone to commit murder and
24 (2) they do not meet the legal requirement of an
25 overt act.   In light of the fact that Greg pled
26 not guilty to the crimes accused (CT 9-11.), any
27 reasonably effective counsel would have moved to
28 challenge all evidence against his client in which the

19

1  the PROSECUTION RELIES UPON to obtain A CONVICTION.
2  It is REASONABLE to ASSUME that had counsel
3  challenged the OVERT ACTS, the PROSECUTION would have
4  been forced to produce sufficient EVIDENCE to
5  support EACH ACT OR RUN the RISK of having ONE OR
6  more ACTS dismissed. As shown herein, the
7  mentioned OVERT ACTS WERE EITHER NOT ACTS IN AND
8  of themselves OR UNSUPPORTED OR lacked finding.
9  Therefore, had counsel challenge the OVERT ACTS it
10  is more than likely that ONE OR more OR All of the
11  ACTS would have been dismissed which would have
12  further WEAKEN the PROSECUTION'S CASE OR RESULTED
13  IN the ENTIRE CASE AGAINST GREB being dismissed,
14  because, the ESSENCE of A CONSPIRACY lies within the
15  Commission of AN OVERT ACT.
16      Trial counsel Also failed to use PREEMPTORY
17  challenge to EXCUSE A potential bias juror from the
18  jury PANEL CONSTITUTES ineffective TRIAL REPRESENTATION.
19  During VOIR DIRE, juror John Elwood was questioned
20  AND ANSWERED AS follows:
21      Mr. Fuetsch (counsel for co-defent Wanda FAIN):
22      "DOES ANYONE have A problem OR would they have
23  A problem with following the INSTRUCTIONS of the
24  Court EVEN if the RESULT that would be REACHED by
25  following the INSTRUCTIONS of the Court WERE
26  CONTRARY to your gut REACTION IN A CASE AS SERIOUS
27  AS that's charged here?"
28  ////

1   Prospective Juror: "I think I would have
2   a problem with it."
3       Mr. Fuetsch: "... could you explain what you
4   mean by you would have a problem with that?"
5       Prospective Juror: I believe there's a higher
6   authority than legal authority that is like moral
7   authority, and to follow like a set of rules rather
8   than more of a moral thing, I think I would be
9   hardpressed to follow the set of rules that are
10  outlined by law."
11      "... but I think if you misconstrue the
12  constitution or broaden its actual authority, then
13  I think that could be potentially wrong."
14  (RT 132-133.)
15      Mr. Arian (Greb's counsel):
16      "Mr. Elwood, I heard you say something
17  about broadening the authority of the constitution.
18  Do you recall that comment?"
19      Prospective Juror: "I do."
20      Mr. Arian: "I wonder if you could say any
21  more about that. I didn't get your complete
22  thought."
23      Prospective Juror: "My thought is a lot of,
24  let's say, somebody's on trial, the jurors sit
25  through the entire trial, they have a gut feeling
26  that these defendants are, let's say, guilty,
27  but a lot of circumstantial evidence has been
28  brought in and it's been found -- or a legal issue

21

1  has been brought up, a minor legal issue that speaks
2  to their innocence. You're supposed to think they're
3  innocent even though they're guilty, because it's
4  a legal argument and it takes precedence over how
5  you feel."
6      MR. Arian: "You're saying that as a juror your
7  gut reaction is very important and you're going to
8  pay a lot of attention to that?"
9      Prospective Juror: "If you've listened to all the
10  facts and you say, yes, they are innocent or guilty,
11  but some legal precedence makes you dismiss that,
12  then I have a big problem with that."
13      MR. Arian: "You might not be able to do that?"
14      Prospective Juror: "No, I would not."
15      MR. Arian: "Would that hold if the judge at
16  the close of the case instructed you that you were
17  to consider this evidence in a certain way and the
18  instructions of the judge went counter to the feelings
19  you just described."
20      Prospective Juror: "I really don't know sitting
21  here right now."
22      MR. Arian: "Would you have trouble with it?"
23      Prospective Juror: "I would have major problems."
24      Any reasonably effective counsel would have
25  used a preemptory challenge to excuse juror John
26  Elwood from the jury panel as a result of his
27  explicit or implicit allegiance to his "gut" feelings
28  opposed to the law and instructions given by

.22

1  the court. Moreover, Elwood's declaration
2  illustrates an abundance of juror misconduct (CT 451-
3  453.), therefore, it is reasonable to assume that
4  Elwood's reliance on his gut feelings during deliberations,
5  rather than the Court's instructions, was influential
6  in the jury's decision to find Greg guilty of the
7  crimes charged, particularly since the verdicts were
8  contrary to law.

9        Ineffective assistance of trial counsel falls under
10 the Strickland's standard, and requires the showing
11 that (1) counsel's performance was constitutionally
12 defective, and (2) counsel's errors were so serious as
13 to deprive the defendant of a fair trial, a trial
14 whose result is reliable. Strickland V. Washington,
15 466 U.S. 668, 687 (1984); Also, see United States
16 V. Cronic, 466 U.S. 648 (1984).
17        In regard to Greg's ineffective assistance of
18 trial counsel (IAC) claim; the state court finds
19 that it is time-barred and/or conclusory
20 allegations without documentation in support
21 thereof. (See Exhibit - B at page #2, lines 10-25.)
22 The state court erred because California has no
23 strict rule setting forth untimeliness in non-capital
24 case. Moreover, it is the state burden to prove
25 untimeliness. Bennett V. Mueller, 322 F.3d 573
26 (9th C.R. 2002). The Ninth Circuit has already
27 established that California's state habeas time
28 limits were not an adequate and independent

23

1  State ground to support procedural default where the
2  time limits were not clear, well-established, and
3  consistently applied prior to petitioner's filing of his first
4  state habeas petition. *Bennett v. Mueller*, 322 F.3d 573,
5  ___ (9th Cir. 2002); *Morales v. Calderon*, 85 F.3d 1387,
6  1393 (9th Cir. 1996), cert. denied, 519 U.S. 1001 (1996); see
7  also, *Bennett v. Mueller*, 64 F.Supp.2d 1160, ___ (C.D.
8  Cal. 2005). Under California's law, the preferred
9  procedure to bring IAC claims is on habeas corpus rather
10  than on direct appeal because it is based on facts that
11  are not contain in the record on appeal. *People v. Tello*,
12  15 Cal. 4th 264 (1997). The United States Supreme Court
13  holds that, as a matter of federal law, an IAC claim
14  can be brought first on habeas corpus. *Massaro v.*
15  *United States*, 123 S. Ct. 1690 (2003). Arguendo, even
16  if some sort of procedural default exists, the Ninth
17  Circuit recognizes that an IAC claim can constitute
18  cause to excuse procedural default. *Manning v. Foster*,
19  224 F.3d 1129, 1133; *Smith v. Idaho*, 392 F.3d 350.
20  The Supreme Court also recognizes a federal habeas
21  court may grant a petition for writ of habeas corpus
22  even in the absence of a showing of cause for the
23  procedural default. *Murray v. Carrier*, 477 U.S.
24  478, 496 (1986). Greg is entitled to equitable tolling
25  because his IAC claim is newly discovered evidence
26  that establishes a credible claim of actual innocence
27  and a claim of fundamental constitutional error.
28  Indeed, the Supreme Court has held that a claim

of actual innocence can be raised "to avoid a procedural bar to the consideration of the merits of a constitutional claim." <u>Schlup V. Delo</u>, 513 U.S. 298, 326-27 (1995). Here, Gees was constitutionally represented by counsel during trial and on direct appeal and neither counsel indicated that an IAC claim existed; it was only through continuous and vigorous review and analysis of the court transcripts did the IAC claim materialized.

The state court further asserts:

"Even assuming Petitioner's ineffective assistance of counsel claims are not time-barred, these claims fail because Petitioner has not provided any documentation to support his claims that his trial and appellate counsel provided ineffective assistance. It is well settled that a petition for writ of habeas should: (1) state fully and with particularity, the facts upon which relief is sought; and, (2) include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations. (<u>People V. Duvall</u>, (1995) 9, Cal. 4th 464, 474.) Conclusory allegations made without any explanation of their basis do not warrant relief."

First, the word "should" is advisory language; not mandatory. Second, Gees's IAC claim is <u>not</u> based on "conclusory allegations without any explanation of their basis."

As demonstrated herein, as well as in the state habeas petition, Greg's trial counsel provided defective and ineffective trial representation by (1) failing to object to the prosecutor's numerous false and unsupported material statements at trial; (2) failing to challenge several questionable overt acts; and (3) failing to use preemptory challenge to excuse a bias juror from the jury panel. Greg has also shown that counsel's actions or omissions, individually or collectively, caused or contributed to his unlawful convictions because the record clearly and convincingly shows that there is not a scintilla of evidence connecting him to the shooting of Robin Williams and that he has always maintained his innocence and non-involvement in the crimes charged. The state court's failure to recognize trial counsel's actions and/or omissions as constitutional errors constitute an unreasonable application of clearly established federal law. See, e.g. Idaho V. Wright, 497 U.S. 805, ___ (1990). Indeed, an attorney's actions or omissions can be so sufficiently egregious as to amount to the sort of "extraordinary circumstances" that would justify the application of equitable tolling. Spitsyn V. Moore, 345 F.3d 796, 800 and f.n. 1, 801-02 (9th Cir. 2003); Baldayaque V. United States, 338 F.3d 145, 153 (2nd Cir. 2003); United States V. Wynn, 292 F.3d 226, 230 (5th Cir. 2002). Also, see, Calderon V.

26

1

2  _United States District Court_, 128 F.3d 1283, 1287-89

3  (9th Cir. 1997)("[E]very relevant signal — from the Act's

4  plain language, to its legislative history, to its

5  structure — points in the same direction: Section 101's

6  one-year timing provision is a statute of limitations

7  subject to equitable tolling, not a jurisdictional bar").

8       The federal court has to consider a habeas corpus

9  petition if there is a claim of fundamental

10 miscarriage of justice. _Schlup v. Delo_, 513 U.S. 298,

11 ____ (1995). Moreover, since Greg has shown

12 "cause and prejudice," the federal court can rule on

13 the merits of this claim. _Coleman v. Thompson_, 501

14 U.S. 722, 749 (1991); _Reed v. Ross_, 468 U.S. 1, 11

15 (1984); _Engle v. Isaac_, 456 U.S. 107, 129 (1982);

16 _Wainwright v. Sykes_, 433 U.S. 72, 87 (1977).

17 And because Greg has shown that counsel's errors had a

18 "substantial and injurious effect or influence in

19 determining the jury's verdict"; the errors are not

20 harmless. _Brecht v. Abrahamson_, 507 U.S. 619, 637

21 (quoting _Kotteakos v. United States_, 328 U.S. 750, 776 (1446)).

22      As illustrated, Greg's right to effective assistance

23 of trial counsel, as guaranteed by the Fifth, Sixth,

24 and Fourteenth Amendments of the United States

25 Constitution, was violated.

26      Based on the above, the Court must grant Greg

27 equitable tolling on this claim, and any other relief

28 the Court deems fair and just.

C. Ineffective Assistance Of Appellate Counsel

Greg's Appellate counsel provided defective and ineffective representation on direct appeal when counsel failed to raise the following non-frivolous claims on appeal: (1) prosecutorial misconduct (as set forth herein); (2) ineffective assistance of trial counsel (as set forth herein); (3) Greg's convictions are based on less than proof beyond a reasonable doubt of every element of the crimes charged (as set forth below); and (4) juror failed to respond honestly to the defense counsels' questions during voir dire (as set forth below).

None of these claims are frivolous and any reasonably effective appellate counsel would have raised each of the mentioned claims on direct appeal.

Had appellate counsel incorporated the mentioned non-frivolous claims into the appellant's brief or at least filed a motion in the Court of Appeal to expand his appointment in order to file and consolidate a state habeas corpus petition to work in conjunction with and in support of the appellant's brief the appeal outcome could have been different.

Greg's appellate counsel raised a claim of insufficiency of evidence on direct appeal, inter alia. Such a claim in and of itself screams ineffective assistance of trial counsel and/or prosecutorial misconduct due to its fundamental

1  MISCARRIAGE of justice NATURE.  Counsel's failure to
2  pursue A claim of ineffective Assistance of trial
3  counsel AND/or prosecutorial misconduct on Appeal
4  deprived the insufficiency of evidence claim of
5  crucial evidentiary support thereof.
6      The proper standard for evaluating a claim
7  that Appellate counsel was ineffective is that
8  enunciated in Strickland V. Washington, 466 U.S. 668
9  (1984).  See, Smith V. Robbins, 528 U.S. 259, 285
10  (2000).
11      The state court denied this claim, ineffective
12  Assistance of Appellate counsel, on the same grounds
13  in which it denied the ineffective assistance of trial
14  counsel claim. (See Exhibit -B at pages 2-3.)
15  The state court erred in its denial of this claim
16  As well.  And because the state court used the
17  same legal Arguments And case laws to deny the
18  Ineffective Assistance of trial counsel and
19  ineffective Assistance of Appellate counsel claim;
20  Greg supports this claim by reiterating And
21  RE-Alleging the same facts, Arguments and case laws
22  As previously submitted in his ineffective Assistance
23  of trial counsel's claim set forth herein At
24  pages 23-27 As if fully stated.
25      The non-frivolous claims mentioned herein, if
26  only raised on Appeal, would have provided evidentiary
27  support for the claims raised in the Appellant's brief
28  And contributed to the perseverance of a successful

1  APPEAL.
2       Notwithstanding the state court's total denial of
3  Greg's ineffective assistance of appellate counsel claim,
4  the court also finds that Greg's claim that (a) his
5  convictions are based on less than proof beyond a
6  reasonable doubt of every element of the crimes
7  charged and (b) juror gave false and/or misleading
8  statements during voir dire are procedurally barred [2]
9  because they were raised and rejected on appeal.
10  (See Exhibit -B at page #2, lines 5-9.) The state
11  court erred. These claims are being brought for
12  the very first time, and properly so, because Greg's
13  appellate counsel was ineffective in failing to raise
14  them on direct appeal. In re Winship, Not Jackson
15  V. Virginia, 443 U.S. 307 (1979), set forth the
16  standard in determining whether a petitioner was
17  convicted on less than proof beyond a reasonable
18  doubt of every element of the crimes charged.
19  In re Winship, 397 U.S. 358 (1970); Also, see,
20  Leavitt V. Vasquez, 875 F.2d 260 (9th Cir. 1989).

21  _____

22       [2]  On direct appeal, Greg's appellate counsel
23  raised an "Insufficiency of Evidence" claim regarding
24  the conspiracy to commit murder conviction and used
24  Jackson V. Virginia, 443 U.S. 307 (1979) in support
25  thereof. And raised jury misconduct claims of:
26  consulting bus schedules, disobeying instructions, and
26  a juror's reliance on his personal knowledge regarding
27  the effects of cocaine on memory. None of these
28  claims are being raised here.

1 And a claim of whether a juror gave false and/or
2 misleading statements during voir dire is determined
3 under Irwin V. Dowd. Irwin V. Dowd, 366 U.S.
4 717 (1961). The entire basis for the state court's
5 denial of these claims were a mistake.
6      The Ninth Circuit recognizes that, where the
7 state court mistakenly fails to consider a habeas claim
8 that has been properly raised, the state court has not
9 "Adjudicated" that claim as required by the AEDPA,
10 and therefore the state denial is entitled to no
11 deference at all on federal habeas corpus. Pirtle V.
12 Morgan, 313 F.3d 1160 (9th Cir. 2002). Other circuits
13 similarly agree, SEE, Appel V. Horn, 250 F.3d 203,
14 210 (3rd Cir. 2001); Mercadel V. Cain, 179 F.3d 271,
15 274-75 (5th Cir. 1999); Chadwick V. Janecka, 312 F.3d
16 597, 605 (2nd Cir. 2002); Fortini V. Murphy, 257 F.3d
17 39 (1st Cir. 2001). Federal courts can consider a
18 habeas corpus petition if there is a claim of
19 fundamental miscarriage of justice. Schlup V. Delo,
20 513 U.S. 298 (1995). Moreover, since Grees has
21 shown "cause and prejudice," the federal court can
22 rule on the merits of this claim. Coleman V.
23 Thompson, 501 U.S. 722, 749 (1991); Reed V. Ross,
24 468 U.S. 1, 11 (1984); Engle V. Isaac, 456 U.S. 107,
25 129 (1982); Wainwright V. Sykes, 433 U.S. 72,
26 87 (1977).
27
28

31

1      Appellate counsel's failure to raise the mentioned
2  non-frivolous claims on appeal deprived Greg of
3  effective representation of counsel on appeal as well as
4  the right to prove that his convictions are based on
5  less than proof beyond a reasonable doubt of every
6  element of the crimes charged and to prove that a
7  juror gave false and/or misleading statements during
8  voir dire, all in violation of his Fifth, Sixth, and
9  Fourteenth Amendments of the United States
10  Constitution.
11      Based on the above, the Court must grant Greg
12  equitable tolling on each and every claim stated
13  herein, as well as any other relief the Court deems
14  fair and just.

15

16

17      D.   Greg Exercised Due Diligence In Filing
               His Petition For Writ Of Habeas Corpus

18

19      Since Greg's wrongful and unlawful convictions,
20  he has been suffering from mental and psychological
21  problems. (See: Exhibit - H; exact copy of some of
22  Greg's mental health records.) Despite Greg's
23  psychiatric condition, he has been continuously and
24  vigorously conducting an analytical review of his
25  court and reporter's transcripts in an effort
26  to discover meritorious claims to support his

27

28

1   unlawful conviction Allegations. In 2007, Greg
2   learned that his right to A fair trial And due
3   process, As guaranteed under the Fifth, Sixth And
4   Fourteenth Amendments of the United States
5   Constitution, was violated As a result of ineffective
6   Assistance of trial counsel; ineffective Assistance of
7   Appellate counsel; And prosecutorial misconduct.
8   Immediately upon knowledge thereof, on April 26,
9   2007, Greg filed A state petition for writ of habeas
10   corpus regarding the mentioned claims, Among others,
11   in the Superior Court of San Francisco which was
12   denied; he then filed An exact copy of that petition
13   in the Court of Appeal which was denied on July 5,
14   2007, And in the Supreme Court of the State of
15   California which was denied on January 30, 2008.
16   (SEE: Exhibits- A through F; An exact copy of each
17   petition And responses thereto. Also, see, Greg's
18   Declaration Attached hereto At #2.) Therefore,
19   Greg exhausted All claims in the state courts And is
20   entitled to seek vindication of his unlawful
21   convictions via federal writ of habeas corpus.
22     As demonstrated, Greg exercised due diligence
23   in filing his petition for writ of habeas corpus in
24   state And federal courts As required under
25   established law. (28 U.S.C. Sec. 2244(d)(1)(D)
26   (Supp. 1998). Also, see, _Dobbs V. Zant_, 506 U.S.
27   357 (1993).) Moreover, the petition, Along with
28

1   these papers and accompany exhibits, shows
2   "extraordinary circumstances" that, in the interest
3   justice, requires equitable tolling. Lott V. Mueller,
4   304 F.3d 918, 925 (9th Cir. 2002)(equitable tolling
5   requires showing of "extraordinary circumstances,"
6   but "the issue of when grave difficulty merges
7   literally into 'impossibility' should be resolved in
8   [petitioner]'s favor" so as to ensure that "procedural
9   uncertainties [do not] unreasonably snuff out a
10  constitutional claim"); United States V. Zuno-Arce,
11  25 F. Supp. 2d 1087, 1099-1102 (C.D. Cal. 1998, aff'd,
12  209 F.3d 1095, 1102 (9th Cir. 2000), amended,
13  245 F.3d 1108 (9th Cir. 2001), stayed, 271 F.3d
14  (9th Cir. 2001)(mem.), overruled in part on other
15  grounds, ("extend[ing] the miscarriage of justice
16  gateway as a means of considering evidence and
17  constitutional claims otherwise procedurally barred
18  by the AEDPA's period of limitations" because
19  foreclos[ure] [of] a claim of constitutional violation
20  where there has been a colorable showing of factual
21  innocence would likely constitute a due process
22  violation or an improper suspension of habeas
23  corpus relief").
24      Here, Greg alleges and maintains that his
25  petition for writ of habeas corpus contains newly
26  discovered evidence and a "claim of actual innocence"
27  and shows the cause and prejudices associated
28

34

1  with the fundamental constitutional errors and the
2  miscarriage of justice that resulted in his unlawful
3  convictions. The Supreme Court has recognized the
4  need for the issuance of a writ of habeas corpus
5  where an innocent person's liberty or life may be
6  forfeited because of unfair proceedings. Bousley V.
7  United States, 523 U.S. 614, 620 (1980) ("one of the
8  'principal functions of habeas corpus [is] " to assure
9  that no man has been incarcerated under a
10 procedure which creates an impermissibly large
11 risk that the innocent person will be convicted. ");
12 O'Neal V. McAninch, 513 U.S. 432, 442 (1995)
13 ("basic purposes underlying the writ of habeas
14 corpus" include curing "error of constitutional
15 dimension — the sort that risks an unreliable trial
16 outcome and the consequent conviction of an
17 innocent person"); Schlup V. Delo, 513 U.S. 298,
18 326 (1995) ("Indeed, concern about the injustice
19 that results from the conviction of an innocent
20 person has long been at the core of our criminal
21 justice system."); also, United States V. Barron,
22 172 F.3d 1153, 1161 (9th Cir. 1999)(en banc)
23 (" incorporates the fundamental principle that it is
24 never just to punish a man or woman for an
25 innocent act ").

26
27
28

Based on the above, the Court must grant GREG equitable tolling on this claim because he exercised due diligence in filing his petition for writ of habeas corpus; and any other relief the Court deems appropriate.

## Conclusion

As demonstrated, "Good Cause" exists to support GREG's filing of a late petition for a writ of habeas corpus due to newly discovered evidence and a claim of actual innocence.

## Declaration

GREG, the petitioner, declares under penalty of perjury that the foregoing is true and correct.

Dated: 7/8/08

Respectfully submitted,

Gregory L. Brown

GREGORY L. BROWN,
Petitioner

36

## Declaration of Service

CASE NAME : GREGORY L. BROWN V. KEN CLARK, WARDEN

CASE NO. : _____

I declare :

On July 8, 2008 , I served the attached Greg's Declaration And Memorandum In Support Of His Petition For Writ Of Habeas Corpus by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the prison mail collection system at STATE - CORCORAN State Prison , in California, addressed as follows :

Clerk, U.S. District Court
Northern District of California
450 Golden Gate Ave., 16th Floor
San Francisco, CA 94102

I declare under penalty of perjury that the foregoing is true and correct.

Dated : 7/8/08

Gregory L. Brown
GREGORY L. BROWN

Gregory L. Brown
J-82241 (C8-104) c8/1-24
P.O. Box 5246
Corcoran, CA 93212

LEGAL MAIL

Confidential

1053

80

HOM3 - CAT 7/7/08

Clerk, U.S. District Court
Northern District of California
450 Golden Gate Ave., 16 th F
San Francisco, CA 94102

RECEIVED
JUL 1 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

$ 09.40°

LEGAL MAIL